For the reasons herein stated the judgment is

Affirmed.

MALLARD, C.J., and HEDRICK, J., concur.

STATE OF NORTH CAROLINA v. WILLIAM LEONARD CLONTZ

No. 6930SC478

(Filed 19 November 1969)

**1. Homicide § 17—— evidence of threats — improper question**

In this homicide prosecution, the trial court properly sustained the State's objection to a question asked a defense witness as to what deceased had stated to him with regard to the defendant and what threat he had made to the witness, since the question was leading by suggesting a fact not in evidence, and it was susceptible to the interpretation that it

was asking about a threat by deceased against the witness, which would be immaterial.

**2. Criminal Law § 162— improper question before jury — proper question in absence of jury**

Where the court sustained the State's objection to an improper question asked by defense counsel in the presence of the jury, and counsel requested that the witness be allowed to answer in the absence of the jury, defendant may not complain that because the question asked the witness in the absence of the jury was proper the court's ruling upon the question asked in the jury's presence was error.

**3. Homicide § 15; Criminal Law § 89— evidence corroborating previous witness — testimony of previous witness not properly offered**

In this homicide prosecution, the trial court properly refused to allow defendant's sister to testify as to what a previous defense witness had told her, where the previous witness' testimony was never properly offered and was therefore not before the jury.

**4. Criminal Law § 166— abandonment of assignments of error**

Assignments of error not brought forward in appellant's brief are deemed abandoned. Court of Appeals Rule No. 28.

APPEAL by defendant from *Martin, (Harry C.), J.,* 31 March 1969 Session, CHEROKEE Superior Court.

Defendant was tried upon a charge of murder in the second degree. The jury returned a verdict of guilty of manslaughter and defendant was sentenced to a term of not less than fourteen nor more than sixteen years.

The State offered evidence tending to show that on the evening of 2 December 1967 the defendant and one Barbara Murrin were riding around Cherokee County in defendant's car and that they drove to a Mr. Graham's house where the car of the deceased, Henry Dotson, was parked. The defendant twice drove by the house blowing his horn and stopped a third time and asked Mrs. Graham to see Mr. Graham. The defendant then drove to his own home where he got a heavy unidentified object and stuck it under his belt or in his pocket. The defendant and Murrin then returned to the Graham house where the defendant drove by at a fast speed and fired a pistol out the car window and into the air. The Dotson car was not seen at the Graham house at that time.

A short time later the defendant and Murrin passed the Dotson car, and after passing it, the defendant turned around and passed the Dotson car again as the two cars went in opposite directions. The defendant again turned around and pulled up beside the Dotson car which was parked on a side road. The defendant and Dotson had a conversation which the State's witness described as "friendly."

Dotson drove off with defendant following him. As he followed Dotson, the defendant threatened to get even with Dotson and to kill him. The defendant then fired a pistol out the car window into the air. Dotson sped up and turned off onto a dirt road with defendant following him.

The Dotson car was lost from view for a few moments, and when the defendant rounded a curve, the Dotson car was parked in the middle of the road. Dotson was on the outside leaning over the car with a rifle pointed in the direction of defendant's car. The defendant backed up his car but slid into a ditch and against a bank. Dotson then shouted that he didn't want any more trouble and fired. The shot hit the gravel in front of defendant's car. The defendant got out of his car and he and Dotson exchanged some harsh words and threats. Several more shots were fired, one of which struck Dotson and he died shortly thereafter. Defendant was holding a pistol after the shooting. The defendant then reported the incident to officers of the law.

Defendant offered evidence tending to show that sometime prior to the incident Dotson had assaulted and severely cut defendant about the abdomen, requiring 144 stitches to repair the cuts, and that the deceased had threatened the defendant and had attempted to run him off the road on several occasions. Because of this, the defendant was afraid of the deceased.

On the evening in question, the defendant and Barbara Murrin were driving around in the community where the defendant lived. Dotson lived in another section of the county some distance from where the incidents occurred. Defendant went to the Graham home to see Mr. Graham as promised earlier that day. While at the Graham home he did not blow his horn at Dotson or later fire a pistol near that house.

When he later pulled up beside the Dotson car, the defendant told Dotson he was not looking for him. He did not chase after Dotson, threaten him, or fire a pistol while following him. The defendant and Murrin were just driving around and when they came upon Dotson's car in the middle of the road, he could not drive by. The defendant tried to get away by backing up his car, but it slid into a ditch and against a bank and would not move. Dotson said he had cut the defendant once and didn't want any more trouble with him. Then Dotson fired. The defendant fired back with a pistol in an effort to protect his own life. Dotson fired again and the defendant fired and his shot struck Dotson. A high-powered rifle was found by Dotson's body.

*Robert Morgan, Attorney General, by J. Bruce Morton, Trial Attorney, for the State.*

*McKeever and Edwards, by Arthur W. Hays, Jr., for the defendant.*

BROCK, J.

**[1]** Defendant's assignment of error No. 9 is addressed to the ruling of the trial judge in sustaining State's objection to a question propounded to a defense witness. The testimony of the defense witness appears in the record on appeal as follows:

> "My name is Fred Garrett. I live in Murphy and will have lived there three years this April. I knew Henry Dotson prior to his death. Sometime prior to his death, I had a conversation with Henry Dotson.
>
> "Q.  What did Henry Dotson state to you on this occasion with regard to the defendant, Leonard Clontz, and what threat did he make to you?
>
> "State objects.    Sustained.    Exception No. 9."

**[1, 2]**  The question to which the objection was sustained was improper for at least two reasons. First, it was leading by suggesting a fact not in evidence; second, it is susceptible of the interpretation that it was asking about a threat by deceased against the witness Garrett which would be immaterial. Absent the last clause it appears that the question would have been proper; however, counsel did not undertake to rephrase his question. Instead counsel requested that the witness be allowed to answer in the absence of the jury. The trial judge sent the jury from the courtroom to allow the answer in the record. After the jury retired from the courtroom counsel asked his question again, apparently in a proper manner and the witness' answer was responsive. However, this proper question was never propounded before the jury and consequently never ruled upon by the trial judge. Defendant may not now complain that because his question in the absence of the jury was proper that the ruling of the trial judge upon the question propounded in the presence of the jury was error.

**[3]**  While the jury was out defendant called to the stand defendant's sister, who had not theretofore testified, and questioned her. The questions propounded to her related to what the previous witness Garrett had told her. The solicitor for the State objected to this testimony being offered before the jury and the objection was sustained. This ruling of the trial judge is the subject of defendant's assignment of error No. 10. Since the previous witness' (Garrett's)

testimony was never properly offered and therefore not before the jury, it would obviously be incompetent for defendant's sister to testify as to what the previous witness, Garrett, had told her.

Defendant's brief discusses well-established rules of evidence with relation to a showing by a defendant upon a plea of self-defense in a homicide case of communicated threats by deceased against defendant (See *State v. Rice,* 222 N.C. 634, 24 S.E. 2d 483; *State v. Thomas,* 5 N.C. App. 448, 168 S.E. 2d 459), and of uncommunicated threats by deceased against defendant (See *State v. Minton,* 228 N.C. 15, 44 S.E. 2d 346; *State v. Hurdle,* 5 N.C. App. 610, 169 S.E. 2d 17). However, these principles do not operate until evidence of threats is properly offered. Defendant's assignments of error Nos. 9 and 10 are overruled.

[4]    Assignments of error Nos. 1 through 11 (except Nos. 9 and 10 discussed above) are not brought forward in defendant's brief and they are therefore deemed abandoned. Rule 28, Rules of Practice in the Court of Appeals of North Carolina.

Assignments of error Nos. 12 through 29 are to the charge of the Court to the jury. Five of these are not brought forward in defendant's brief and are deemed abandoned. Rule 28, *supra.* We have considered the remaining assignments of error to the charge, and when the charge is viewed contextually, as it must be, we perceive no error prejudicial to defendant. Defendant has had a fair trial free from prejudicial error.

Affirmed.

BRITT and VAUGHN, JJ., concur.